UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04 10756 MEL

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Civil Action No. ) MAGISTRATE JUDGE _____ ) |
| v. | ) ) |
| ALLEN INTERIOR SYSTEMS, INC., DRN, INC. d/b/a NORTHERN INTERIOR SYSTEMS, GUY ALLEN, and SERGE ROY, | ) ) ) ) ) |
| Defendants. | ) ) ) |

RECEIPT # 55234
AMOUNT $ 150
SUMMONS ISSUED YES
LOCAL RULE 4.1 ✓
WAIVER FORM ___
MCF ISSUED ___
BY DPTY CLK TOM
DATE 4/14/04

## COMPLAINT

The plaintiff, Great American Insurance Company, for a cause of action against Allen Interior Systems, Inc., DRN, Inc. d/b/a Northern Interior Systems, Guy Allen, individually, and Serge Roy, individually, (hereinafter collectively referred to as the "Indemnitors" or "Defendants"), states as follows:

### PARTIES

1. The plaintiff, Great American Insurance Company ("Great American") is an Ohio corporation authorized to do business and issue surety bonds in Massachusetts, with a principal place of business at 580 Walnut Street, Cincinnati, Ohio.

2. The defendant, Allen Interior Systems, Inc. ("Allen Interior Systems"), upon information and belief, is a New Hampshire corporation with a principal place of business at 511 Borough Road, Pembroke, NH 03275.

3. The defendant, DRN, Inc. d/b/a Northern Interior Systems ("Northern Interior Systems"), upon information and belief, is a New Hampshire corporation with a principal place of business at 61 Rockingham Road, Londonderry, NH 03053.

4. The defendant, Guy Allen, upon information and belief, is an individual residing at 511 Borough Road, Pembroke, NH 03275.

5. The defendant, Serge Roy, upon information and belief, is an individual residing at 61 Rockingham Road, Londonderry, NH 03053.

## JURISDICTION

6. This Court has jurisdiction in this matter under 28 U.S.C. §1332 as Great American has citizenship diverse from the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## BACKGROUND

7. At all times relevant to this action, Great American has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

8. Allen Interior Systems is or was in the business of construction contracting.

9. Northern Interior Systems is or was in the business of construction contracting.

10. Non-party indemnitor Stateline Drywall, Inc. ("Stateline") is or was in the business of construction contracting.

11. On or about April 9, 2002, Defendants executed an Agreement of Indemnity ("Indemnity Agreement") in favor of Great American. A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u>, and incorporated herein by reference.

## The Stateline Bonds

12. As a direct and proximate result of the Defendants executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 579 59 86 (the "Algonquin Bonds") at the request and on behalf of Stateline, as principal, for the benefit of Eastern Contractors, Inc. ("Eastern"), as obligee, to secure Stateline's performance on the project known as "Renovations to the Algonquin Regional High School" in Northborough, Massachusetts (the "Algonquin Project").

13. As a direct and proximate result of the Defendants executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 653 97 28 (the "Manchester Bonds") at the request and on behalf of Stateline, as principal, for the benefit of Harvey Construction Corporation of New Hampshire ("Harvey"), as obligee, to secure Stateline's performance on the project known as "Manchester Airport West Terminal Expansion" in Manchester, New Hampshire (the "Manchester Project").

## The Northern Bonds

14. As a direct and proximate result of the Defendants executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 559 44 41 (the "Lincoln-Sudbury Bonds") at the request and on behalf of Northern Interior Systems, as principal, for the benefit of Eastern, as obligee, to secure Northern Interior Systems' performance on the project known as "Construction of the New Lincoln-Sudbury Regional High School" (the "Lincoln-Sudbury Project").

15. As a direct and proximate result of the Defendants executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 401 01 90 (the "Hawthorne Bonds") at the request and on

behalf of Northern Interior Systems, as principal, for the benefit of Clark Construction Group, Inc. ("Clark"), as obligee, to secure Northern Interior Systems' performance on the project known as "Hawthorne Apartments at Gillette Ridge" (the "Hawthorne Project").

16. In February 2004, Stateline defaulted on the Algonquin and Manchester Projects, and Northern defaulted on the Lincoln-Sudbury and Hawthorne Projects (collectively the "Bonded Projects").

17. As a direct result of the defaults of Stateline and Northern, Great American is currently making arrangements for completion of the Bonded Projects, and will use the unpaid balance of the Stateline and Northern subcontracts to complete the work and pay the legitimate claims of subcontractors, suppliers, and laborers who are entitled to recover under the Algonquin, Manchester, Lincoln-Sudbury and Hawthorne Bonds (collectively the "Project Bonds").

18. As a direct and proximate result of the defaults of Stateline and Northern, Great American has sustained, and continues to sustain, losses in the form of costs to complete the Projects and satisfy legitimate Payment Bond claims, attorneys' fees, expenses, and interest, in an amount in excess of $499,676.52.

19. The Indemnity Agreement (¶2) executed by the Defendants provides (in relevant part) that the "[Defendants] jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep [Great American] indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which [Great American] may sustain and incur: (1) By reason of having executed or procured the execution of Bonds on behalf of any of [Defendants], (2) By reason of the failure of [Defendants] to perform or comply with any of the covenants and

conditions of this Agreement, or (3) In enforcing any of the terms, covenants or conditions of this Agreement."

20. The Indemnity Agreement (¶2) further provides that "[p]ayment by reason of the aforesaid causes shall be made to [Great American] by [Defendants], upon demand by [Great American], as soon as liability exists or is asserted against [Great American], whether or not [Great American] shall have made any payment therefor. The amount of such payment to [Great American] by [Defendants] shall be determined by [Great American] and [Great American's] demand for payment hereunder may at [Great American's] option be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with [Great American] by or on behalf of [Defendants]. [Great American] shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which [Defendants] would be obligated to indemnity [Great American] under the terms of this Agreement."

21. The Indemnity Agreement (¶2) further provides that "[Defendants] acknowledge that the failure of [Defendants] to deposit with [Great American], immediately upon demand, the sum demanded by [Great American] as payment shall cause irreparable harm to [Great American] for which [Great American] has not adequate remedy at law. [Defendants] agree that [Great American] shall be entitled to injunctive relief for specific performance of any or all of the obligations of [Defendants] under this Agreement including the obligation to pay to [Great American] the sum demanded and hereby waive any claims or defenses to the contrary."

22. The Indemnity Agreement (¶2) further provides that "[i]n the event of any payment of any kind by [Great American], [Defendants] further agree that in any accounting between [Great American] and [Defendants], [Great American] shall be entitled to a charge for any and all disbursements made by [Great American] in good faith in and about the matters

herein contemplated by this Agreement under the belief that [Great American] is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for [Great American] to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by [Great American] shall be prima facie evidence of the fact and amount of [Defendants'] liability to [Great American]."

23. The Indemnity Agreement (GENERAL PROVISIONS) further provides that "[b]y executing this Agreement [each Defendant] [is] bound jointly, severally and/or collectively to [Great American] with respect to all Bonds executed, provided or procured or to be executed, provided or procured by [Great American] at any time in behalf of any of the [Defendants], and with respect to all undertakings of this Agreement."

24. In accordance with its rights under the Indemnity Agreement, Great American has made demand upon the Defendants to hold it harmless from all loss, costs, and expenses it incurred as a result of the defaults of Stateline and Northern. The Defendants have failed and/or refused to reimburse Great American in accordance with their obligations under the Indemnity Agreement.

25. Great American expects to sustain further losses in the form of additional attorneys' fees and legal expenses as a result of this litigation, all of which are recoverable under the specific terms and conditions of the Indemnity Agreement.

26. Great American has complied with all conditions precedent to commencing this action.

## COUNT I

### (Indemnity)

27. Great American repeats and incorporates by reference the allegations contained in

paragraphs 1 though 24, as if set forth at length here.

28. As a direct and proximate result of Great American's execution of the Bonds on behalf of Stateline and Northern, and at the request of Defendants, Great American has sustained losses in excess of $499,676.52, and anticipates sustaining further losses and incurring additional expenses in investigating, defending and/or paying claims, and in prosecuting this claim for indemnity.

29. Despite demands from Great American to the Defendants to hold Great American harmless from all losses, costs, and expenses it incurred in connection with the Bonded Projects, the Defendants have failed and/or refused to comply.

30. The Defendants are liable as indemnitors to Great American for all losses, costs, and expenses incurred in relation to claims made on the Bonds, in addition to the costs, expenses, and attorneys' fees incurred in prosecuting this action, all in accordance with the specific terms and conditions of the Indemnity Agreement.

## COUNT II

### (Common Law Indemnity)

31. Great American repeats and incorporates by reference the allegations contained in paragraphs 1 though 28, as if set forth at length here.

32. As a direct and proximate result of Great American's execution of the Project Bonds on behalf of and at the request of its principals, Great American has sustained losses and expenses, and anticipates sustaining further losses and expenses including those associated with prosecuting this claim for indemnity.

33. Pursuant to Great American's common law right of indemnity, the Defendants are liable to Great American for all losses, costs, expenses, attorneys' fees, and interest incurred in relation to claims made on the Project Bonds, in addition to the costs, expenses, and attorneys' fees incurred in prosecuting this action.

## COUNT III

### (Breach of Contract)

34. Great American repeats and incorporates by reference the allegations contained in paragraphs 1 though 31, as if set forth at length here.

35. Pursuant to the Agreement, the Defendants are required to hold Great American harmless, or otherwise reimburse Great American for its losses and expenses as set forth above.

36. Despite demands from Great American to the Defendants to reimburse Great American for all of its incurred losses, the Defendants have refused to comply.

37. The Defendants' failure to make payment upon demand constitutes a breach of the Agreement for which the Defendants are liable.

## COUNT IV

### (Specific Performance)

38. Great American repeats and incorporates by reference the allegations contained in paragraphs 1 though 35, as if set forth at length here.

39. Pursuant to Great American's rights under the Indemnity Agreement (¶2), the Defendants are required to deposit collateral acceptable to Great American in an amount sufficient to indemnify Great American with respect to all claims made on the Project Bonds.

## COUNT V

### (Specific Performance)

40. Great American repeats and incorporates by reference the allegations contained in paragraphs 1 though 37, as if set forth at length here.

41. Pursuant to Great American's common law rights, as well as its rights as set forth in the Indemnity Agreement, the Defendants are required to hold Great American harmless from and against any and all liability for losses, costs and/or expenses, including attorneys' fees and interest, incurred by reason of having executed the Project Bonds.

## COUNT V

### (Quia Timet/Exoneration)

42. Great American repeats and incorporates by reference the allegations contained in paragraphs 1 though 39, as if set forth at length here.

43. By reason of the Project Bonds issued by Great American at the request and on behalf of the Defendants, Great American, if so adjudged, may be compelled to pay and satisfy claims and/or demands on the Project Bonds.

44. Great American possesses the equitable rights of Quia Timet and Exoneration to demand that the Defendants adequately secure or collateralize Great American prior to any payment by Great American.

45. Great American's loss of its equitable rights of Quia Timet and Exoneration constitutes an irreparable harm for which there is no adequate legal remedy.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff, Great American Insurance Company, prays that this Honorable Court enter judgment in its favor against the Defendants, jointly and severally, as follows:

(1) By entering an Order requiring the Defendants to immediately indemnify Great American for all incurred losses, plus interest, costs, attorneys' fees, and any other incurred expenses;

(2) By entering an Order requiring the Defendants to allow Great American to inspect and copy the books, records, and accounts of the Defendants;

(3) By entering an Order requiring the Defendants to provide collateral security to Great American in an amount necessary to properly protect Great American against any claims and/or potential claims on the Project Bonds, expenses, and attorneys' fees;

(4) By entering judgment against the Defendants, jointly and severally, for any and all amounts that might be adjudged against Great American, plus interest, costs, attorneys' fees and any other incurred expenses; and

(5) By granting Great American such other and further relief that the Court deems just and proper.

> Respectfully submitted,
>
> **GREAT AMERICAN INSURANCE COMPANY,**
>
> By its attorneys,
>
> *[signature]*
>
> Bradford R. Carver, BBO #565396
> CETRULO & CAPONE LLP
> Two Seaport Lane, 10th Floor
> Boston, MA 02210
> (617) 217-5500

Dated: April 13, 2004