UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br>      Plaintiff,<br>v.<br><br>ALLEN INTERIOR SYSTEMS, INC.,<br>DRN, INC. d/b/a NORTHERN<br>INTERIOR SYSTEMS, GUY ALLEN, and<br>SERGE ROY,<br>      Defendants,<br><br>ALLEN INTERIOR SYSTEMS, INC., and<br>GUY ALLEN,<br>      Counterclaimants,<br><br>v.<br><br>SERGE ROY,<br>      Counterdefendant. | Civil Action No. 04-10756 (MEL) |

## GREAT AMERICAN INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Great American Insurance Company ("Great American"), hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment against Indemnitor, Serge Roy(hereinafter referred to as "Indemnitor").

### I.  INTRODUCTION

The material facts in this case can be simply stated as follows:

1. The Indemnitor executed an Agreement of Indemnity ("Indemnity Agreement") promising to indemnify Great American for any and all losses Great American incurred as a result of issuing surety bonds on behalf of its principals, State Line Drywall, Inc. ("State Line") and DRN, Inc. d/b/a Northern Interior Systems ("Northern");

1

2. Great American, in good faith, incurred significant losses as a direct and proximate result of having issued surety bonds on behalf of its principals, State Line and Northern;

3. The Indemnitor has failed and/or refused to reimburse Great American for its losses in accordance with the specific terms and conditions of the Indemnity Agreement.

The relevant law can also be simply stated as follows:

1. A surety such as Great American is entitled to indemnification for payments made in good faith to discharge its principals' obligations; and

2. Indemnity agreements, such as the one at issue in this case, are valid and enforceable, and are intended to provide comprehensive protection to the surety for losses sustained in fulfilling its obligations on bonds, including reimbursement of all legal and consultant fees.

Based on the foregoing, there can be no reasonable dispute that, as a signatory to the Indemnity Agreement, the Indemnitor is required to indemnify Great American for all of its losses, including claims paid by Great American, expenses incurred in investigating claims made against the bonds, and consultant and attorneys' fees and expenses.

## II. UNDISPUTED FACTS

At all times relevant to this action, Great American has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on construction projects. At all times relevant herein, State Line and Northern were in the business of construction contracting.

On or about April 9, 2002, Indemnitor, among others, executed the Indemnity Agreement in favor of Great American. A true and correct copy of the Indemnity Agreement is attached as <u>Exhibit A</u> to Great American's Complaint filed April 14, 2004.

## THE STATE LINE BONDS

As a direct and proximate result of the Indemnitor executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 579 59 86 (the "Algonquin Bonds") at the request and on behalf of State Line, as principal, for the benefit of Eastern Contractors, Inc.("Eastern"), as obligee, to secure State Line's performance on the project known as "Renovations to the Algonquin Regional High School" in Northborough, Massachusetts(the "Algonquin Project").

As a direct and proximate result of the Indemnitor executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 653 97 28 (the "Manchester Bonds") at the request and on behalf of State Line, as principal, for the benefit of Harvey Construction Corporation of New Hampshire ("Harvey"), as obligee, to secure State Line's performance on the project known as "Manchester Airport West Terminal Expansion" in Manchester, New Hampshire(the "Manchester Project").

## THE NORTHERN BONDS

As a direct and proximate result of the Indemnitor executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 559 44 41 (the "Lincoln-Sudbury Bonds") at the request and on behalf of Northern, as principal, for the benefit of Eastern, as obligee, to secure Northern's performance on the project known as "Construction of the New Lincoln-Sudbury Regional High School"( the "Lincoln-Sudbury Project").

As a direct and proximate result of the Indemnitor executing the Indemnity Agreement, and in reliance thereon, Great American, as surety, executed Subcontract Performance and Payment Bonds No. 401 01 90 (the "Hawthorne Bonds") at the request and on behalf of Northern, as principal for the benefit of Clark Construction Group, Inc. ("Clark"), as obligee, to secure Northern's performance on the project known as "Hawthorne Apartments at Gillette Ridge" (the "Hawthorne Project").

## GREAT AMERICAN'S LOSSES

In February 2004, State Line defaulted on the Algonquin and Manchester Projects, and Northern defaulted on the Lincoln-Sudbury and Hawthorne Projects (collectively the "Bonded Projects"). As a direct result of the defaults of State Line and Northern, Great American made arrangements for completion of the Bonded Projects and payment of the legitimate claims of subcontractors, suppliers, and laborers entitled to recover under the Algonquin, Manchester, Lincoln-Sudbury and Hawthorne Bonds (collectively the "Project Bonds"). As a direct and proximate result of the defaults of State Line and Northern, Great American has sustained, and continues to sustain, losses in the form of costs to complete the Projects and satisfy legitimate Payment Bond claims, attorneys' fees, expenses, and interest, in an amount in excess of $3,404.705.92.

As set forth in the accompanying Affidavit of Ed Kirsch Great American has sustained the following losses to date, exclusive of interest, as a direct result of issuing the Bonds on behalf of State Line and Northern:

| **NEW LINCOLN-SUDBURY** | **PAID** |
|---|---|
| Loss | $335,492.68 |
| Expenses | $2,957.50 |
| Total | $338,450.18 |

| **ALGONQUIN HS** | **PAID** |
|---|---|
| Loss | $941,437.70 |
| Expenses | $146,018.05 |
| Total | $1,087,455.75 |

| **HAWTHORN APARTMENTS** | **PAID** |
|---|---|
| Loss | $1,952,466.41 |
| Expenses | $12,570.49 |
| Total | $1,965,036.90 |

| **MANCHESTER AIRPORT** | **PAID** |
|---|---|
| Expenses | $13,763.09 |
| Total | $13,763.09 |

| | |
|---|---|
| **TOTAL LOSS TO DATE** (for all four projects) | $3,229,396.79 |
| **TOTAL EXPENSES TO DATE** (for all four projects) | $ 175,309.13 |
| **TOTAL LOSS TO DATE** | $3,404,705.92 |

Great American expects to sustain further losses in the form of additional consultant and attorneys' fees and expenses, all of which are recoverable under the specific terms and conditions of the Indemnity Agreement.

5

## THE INDEMNITY AGREEMENT

The Indemnity Agreement (¶2) executed by the Indemnitor provides (in relevant part) that the "[Indemnitor] jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep [Great American] indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which [Great American] may sustain and incur: (1) By reason of having executed or procured the execution of Bonds on behalf of any [Indemnitor], (2) By reason of the failure of [Indemnitor] to perform or comply with any of the covenants and conditions of this Agreement, or (3) In enforcing any of the terms, covenants or conditions of this Agreement."

The Indemnity Agreement (¶2) further provides that "[p]ayment by reason of the aforesaid causes shall be made to [Great American] by [Indemnitor], upon demand by [Great American], as soon as liability exists or is asserted against [Great American], whether or not [Great American] shall have made any payment therefor. The amount of such payment to [Great American] by [Indemnitor] shall be determined by [Great American] and [Great American's] demand for payment hereunder may at [Great American's] option be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with [Great American] by or on behalf of [Indemnitor]. [Great American] shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which

[Indemnitor] would be obligated to indemnify [Great American] under the terms of this Agreement."

The Indemnity Agreement (¶2) further provides that "[Indemnitor] acknowledges that the failure of [Indemnitor] to deposit with [Great American], immediately upon demand, the sum demanded by [Great American] as payment shall cause irreparable harm to [Great American] for which [Great American] has no adequate remedy at law. [Indemnitor] agree that [Great American] shall be entitled to injunctive relief for specific performance of any or all of the obligations of [Indemnitor] under this Agreement including the obligation to pay to [Great American] the sum demanded and hereby waive any claims or defenses to the contrary."

The Indemnity Agreement (¶2) further provides that "[i]n the event of any payment of any kind by [Great American], [Indemnitor] further agrees that in any accounting between [Great American] and [Indemnitor], [Great American] shall be entitled to a charge for any and all disbursements made by [Great American] in good faith in and about the matters herein contemplated by this Agreement under the belief that [Great American] is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for [Great American] to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by [Great American] shall be prima facie evidence of the fact and amount of [Indemnitor's] liability to [Great American]."

The Indemnity Agreement (GENERAL PROVISIONS) further provides that "[b]y executing this Agreement [each Indemnitor] [is] bound jointly, severally and/or collectively to [Great American] with respect to all Bonds executed, provided or procured or to be executed, provided or procured by [Great American] at any time on behalf of any of the [Indemnitors], and with respect to all undertakings of this Agreement."

In accordance with its rights under the Indemnity Agreement, Great American made demand upon the Indemnitor to hold it harmless from all loss, costs, and expenses it incurred as a result of the defaults of State Line and Northern. The Indemnitor has failed and/or refused to reimburse Great American in accordance with his obligation under the Indemnity Agreement.

At all times relevant hereto, Great American acted in good faith in fulfilling its obligations as surety in the investigation and payment of claims made on the Project Bonds. Great American's determinations to pay claims and/or make disbursements were made in good faith under the belief that it is or was liable for the sums and amounts so paid or disbursed or that it was necessary or expedient to make such payments or disbursements. By reason of issuing the aforementioned Project Bonds, Great American has sustained losses in the amount of at least $3,404,705.92, excluding interest, and has incurred and will continue to incur additional costs and attorneys' fees in the further prosecution and defense of this action.[1] The Indemnitor has failed to

---

[1] Great American expressly reserves the right to recover all additional loss payments, attorneys' and consultant fees, and expenses incurred in prosecution this action.

reimburse Great American for its losses, costs, and expenses in violation of the specific terms of the Indemnity Agreement.

### III.  ARGUMENT

Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. *Cassesso v. Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Community National Bank v. Dawes*, 369 Mass. 550, 553 (1976); Fed.R.Civ.P. 56. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, "and that the moving party is entitled to judgment as a matter of law." *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17 (1989). "A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial" and mandates summary judgment in favor of the moving party." *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 711 (1991).

> **A.  Great American is Entitled to Indemnification Pursuant to the Indemnity Agreement as a Matter of Law Because the Indemnitor Signed the Agreement of Indemnity, Great American Incurred Losses in Good Faith, and the Indemnitor Has Refused to Reimburse Great American.**

It is well settled that a surety is entitled to indemnification for payments made to discharge its principal's obligations. See *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137 (1962); *Admiral Drywall, Inc. v. Cullen*, 56 F.3d 4, 5 (1st Cir. 1995). Massachusetts courts have specifically held that a surety seeking indemnification based on an indemnity agreement is entitled to judgment as a matter of law where: (1) the Indemnitors signed the indemnity agreement, (2) the surety incurred losses, and (3) the Indemnitors have

9

refused to indemnify the surety. See *Hartford Acc. & Indemn. Co. v. Millis Roofing and Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 999 (1981) (holding merit of surety's payments not material because surety averred that it settled claims based on good faith belief, and Indemnitors had no evidence to contradict); *American Employers' Ins. Co. v. Horton*, 35 Mass. App. Ct. 921, 923-24 (1993) (holding Indemnitors' expressions of belief in disagreement with surety's payments not sufficient to defeat summary judgment). Absent a showing of bad faith on the part of Great American in the payment of claims, which the Indemnitor cannot show here, the Indemnitor is liable to reimburse Great American for its losses.[2]

An express indemnity agreement between a surety and its indemnitor, like the one executed by the Indemnitor in this case, is to be interpreted "like any ordinary contract, with attention to language, background, and purpose." *Speers v. H.P. Hood, Inc.*, 22 Mass. App. Ct. 598, 600 (1986). The Supreme Judicial Court of Massachusetts has specifically held, in construing similar indemnity agreements, that "[i]t is plain that the broad language of [the indemnity clause] manifests an intention to provide *comprehensive protection* to the [surety] for *any losses* which it might sustain because of its obligations on these surety bonds." *Peerless Cas. Co. v. Marinucci Bros. & Co.*, 336 Mass. 691, 695 (1958) (emphasis added), citing *Curtis v. Banker*, 136 Mass. 355, 359 (1884) and *Hartford Accident & Indemnity Company v. Casassa*, 301 Mass. 246, 255 (1938).

---

[2] It is clearly established that to demonstrate bad faith by a surety in the manner in which the surety settles a claim or incurs expense, the principal must show "more than bad judgment, negligence or insufficient zeal." *Millis Roofing*, 11 Mass. App. Ct. at 999. "Want of good faith . . . carries an implication of a dishonest purpose, conscious doing of wrong, or

The obligation to reimburse a surety for its outlay extends to reimbursement of all legal and investigative fees incurred by the surety. See *Peerless*, 336 Mass. at 695 (surety entitled to reimbursement of fees incurred to investigate and remedy principal's default); *Hartford Accident & Indemnity Co.*, 301 Mass. at 255 (same); see also *Leventhal v. Krinsky*, 325 Mass. 336, 341 (1950) (holding that reasonable attorneys' fees may be recovered where contract between parties provided for their payment).

It is undisputed that the Indemnitor signed the Indemnity Agreement. In fact, the Indemnitor has admitted as a matter of record that he signed the Indemnity Agreement. See Answer of Serge Roy (¶11), dated July 26, 2004. As set forth in the accompanying Affidavit of Ed Kirsch, Great American fulfilled its obligations by promptly investigating and resolving the claims brought against the Bonds, and has incurred losses and expenses in an amount of no less than $3,404,705.92.[3] Moreover, Great American continues to incur additional losses pursuing this indemnity action.

Given the firmly established precedents of this Commonwealth, there can be no doubt that Great American is entitled to summary judgment on its indemnification claim as a matter of law. See, e.g., *Transamerica Premier Ins. Co. v. Electro Maintenance and Service Corp.*, 1994 WL 879652 (Mass. Super. 1994) (granting surety's motion for summary judgment where principal failed to show that fees were incurred in bad faith);

---

breach of duty through motive of self-interest or ill will." Id. at 999-1000; see also *Horton*, 35 Mass. App. Ct. at 921.

[3] Pursuant to the terms of the Indemnity Agreement, "vouchers, invoices, an affidavit or other evidence of any such payments made by the Surety [Great American] shall be prima facie evidence of the fact and amount of the Undersigned's [Indemnitor's] liability to the Surety. See also, *American Employers' Insurance Company v. Horton*, 35 Mass. App. Ct. 921 (1993);

11

*Union Pacific Ins. Co. v. Caruso Development Co., Inc.*, 1994 WL 879823 (Mass. Super. 1994) (same).

### B. The Indemnitor's Affirmative Defenses are Not Sufficient to Preclude Entry of Judgment in Great American's Favor.

None of the affirmative defenses asserted by Indemnitor create a genuine issue of material fact and, therefore, cannot preclude the entry of summary judgment in Great American's favor. Indeed, the only relevant issue for purposes of this Motion is whether Great American incurred its losses based on a good faith belief that it was liable for those losses, or that it was necessary or expedient to make such payments or disbursements. The fact that Great American sustained losses based on a good faith belief that the payments were due and owing is made evident by the Affidavit of Ed Kirsch, the Claims Consultant who handled the claims on the Bonds, and the Indemnitor has no reasonable expectation of establishing otherwise.

### IV. CONCLUSION

The Indemnitor has no reasonable expectation of offering at trial any affirmative evidence to dispute that the Indemnitor executed the Agreement of Indemnity, that Great American, in good faith, incurred losses as a result of issuing the Bonds in excess of $3,404,705.92, and that the Indemnitor has failed to reimburse Great American as required by the Agreement of Indemnity. In light of the foregoing, Great American Insurance Company respectfully requests that this Court grant its Motion for Summary

---

*Hartford Accident and Indemnity Company v. Millis Roofing and Sheet Metal, Inc.*, 11 Mass. App. Ct. 998 (1981).

Judgment in its entirety, and for such other and further relief that this Court deems just and proper.

Respectfully submitted,
Great American Insurance Company,
By its attorneys,

/s/ Jonathan Burwood
Bradford R. Carver, BBO #565396
Jonathan C. Burwood, BBO#643674
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 217-5500

Date: July 15, 2005

## CERTIFICATE OF SERVICE

I, Jonathan C. Burwood, BBO #643674, hereby certify that on this 15th day of July, 2005, I caused a true and accurate copy of the above to be served via first class mail, postage prepaid, on the following counsel of record:

| | |
|---|---|
| William S. Gannon, Esq.<br>889 Elm Street<br>Manchester, NH 03101 | David W. Carr, Esq.<br>4 Newman Way<br>Arlington, MA 02174 |

Richard B. Couser, Esq.
D'Amante Couser Steiner Pellerin, P.A.
Nine Triangle Park Drive
P.O. Box 2650
Concord, NH 03302-2650

/s/ Jonathan Burwood
Jonathan C. Burwood, BBO#643674

01613-0007
345812v1

34005655v1 IMPORT