# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Great American Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | Docket No:    04-10756(MEL) |
| | ) | |
| vs. | ) | |
| | ) | |
| Allen Interior Systems, Inc., DRN, Inc. | ) | |
| d/b/a Northern Interior Systems, | ) | |
| Guy Allen and Serge Roy, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF CHRISTINE T. CUSACK

Christine T. Cusack, being duly sworn, says as follows:

1.    My name is Christine T. Cusack. I have personal knowledge of the matters herein stated.

2.    I am a forensic document examiner. My qualifications are set forth in the attached Exhibit A.

3.    I have examined the following three documents bearing the signature "Guy Allen" to determine if the signature "Guy Allen" on these documents is a facsimile signature stamp or an original inked signature, and, if an original inked signature, whether or not Guy Allen signed his name to the document in question:

   A.    Original Great American Insurance Companies–Agreement of Indemnity dated April 9, 2002 bearing three signatures of Guy Allen on page 6.

   B.    Original Non Transfer of Assets Agreement dated April 9, 2002 bearing two signatures of Guy Allen.

   C.    Original Resolution (To Be used with Agreement of Indemnity) dated May 23, 2002 bearing one signature of Guy Allen.

My report from my examination is attached to this affidavit as Exhibit B.

4.    Based upon my examination, it is my conclusion that the five signatures of Guy Allen on the documents identified in paragraphs 3.A. and 3.B. above were produced with a facsimile signature stamp.

5.    Based upon my examination, it is my conclusion that the signature of Guy Allen on the document identified in paragraph 3.C. above was not written by the Guy Allen who wrote the signatures on the documents provided to me as known signatures of Guy Allen (documents K1a–K25 in my report).

6.    The facts set forth in my Exhibit B are true and the opinions and conclusions reached therein are my opinions and conclusions based upon my education, training, experience, and examination of the documents in question.

Christine T. Cusack

Commonwealth of Massachusetts
County of Middlesex

Subscribed and sworn to by Christine T. Cusack, known to me or satisfactorily proven, on the _____ day of November, 2005.

Before me:

Notary Public
My Commission Expires: Feb. 24, 2006

N:\OFFICE\Rbc - Clients\Allen, Guy\MOTIONS - COURT\Affidavit of Christine Cusack.wpd

2

# CUSACK AND McCARTHY
## FORENSIC DOCUMENT EXAMINERS
### 268 MAIN STREET, PMB 178
### NORTH READING, MASSACHUSETTS 01864-1390

Tel: (978) 276-1963
Fax: (978) 276-1964

**CURRICULUM VITAE**
**CHRISTINE T. CUSACK**

## EDUCATION:

**University of Massachusetts - Bachelor of Science (Magna Cum Laude)**

## PROFESSIONAL TRAINING:

**1980-1985 - studied the scientific examination of documents with the late Elizabeth McCarthy and Catherine A. Cusack, nationally known document examiners.**

**Approximately twenty-four years experience in the scientific examination of suspect and fraudulent documents; Identification of Signatures; Handwriting and Handprinting; Detection of Forgery, Erasures, Alterations and Substitutions; Decipherment of Erased Writing; Typewriting; Anonymous letters; Examination of Paper and Ink.**

## SEMINARS ATTENDED:

**Attendance at the Annual Meetings of the American Academy of Forensic Sciences: San Diego (1987), Philadelphia (1988), Las Vegas (1989), Anaheim (1991), New Orleans (1992), Boston (1993), San Antonio (1994) Seattle (1995), New York (1997), Orlando (1999)**

**Attendance at the Annual Meetings of the American Society of Questioned Document Examiners: Boston (1982), Nashville (1984), Savannah (1986), Vancouver (1987), Aurora (1988), Arlington (1989), San Jose (1990), Orlando (1991), Milwaukee (1992), Ottawa (1993), Long Beach (1994), Chicago (1995), Washington (1996), Phoenix (1997), Ottawa (2000), San Diego (2002)**

**Attendance at the Annual Meetings of the Northeastern Association of Forensic Scientists: Providence (1990), Springfield (1993), New York (1994), Newport (1998), Hyannis (1999), Pittsfield (2003), Mystic (2004).**

**Attendance at the Bi-Annual Meeting of the Southwestern Association of Forensic Document Examiners: San Francisco (1993)**

**SEMINARS ATTENDED:**
**(Continued)**

**Attendance at the Bi-Annual Meeting of the Midwestern Association of Forensic Scientists: Cleveland (1994)**

**Attendance at Forensic Document Examiners Advanced Study Course in the Examination of Medical Records: Miami (1997)**

**Attendance at The Second International Symposium On The Forensic Examination of Questioned Documents; Co-Hosted By The Federal Bureau of Investigation Laboratory Division and The New York State Police Forensic Investigation Center; By Invitation Only: Albany (1999)**

**PROFESSIONAL PUBLICATIONS:**

**"Seals" (pp. 3 – 24) in *Forensic Examination of Rubber Stamps*, Jan Seamen Kelly, Springfield, Illinois, Charles C. Thomas – Publisher, Ltd., 2002**

**A Comparison Study of the Handwriting of Adolescents, co-authored with John Hargett, Chief Document Examiner - U. S. Secret Service; published Forensic Science International, August, 1989, Vol. 42, pp. 239-248**

**PROFESSIONAL PAPERS:**

**The Puzzle of Patterns, presented to the American Society of Questioned Document Examiners, Savannah, Georgia (1986)**

**A Comparison Study of the Handwriting of Adolescents, co-authored with John Hargett, Chief Document Examiner - U. S. Secret Service; presented to The American Academy of Forensic Sciences, Philadelphia, Pennsylvania (1988); presented at the 10th Australia International Forensic Sciences Symposium, Brisbane, Australia, (1988**

**One to One: A Valid Comparison?, presented to the American Academy of Forensic Sciences, New Orleans, Louisiana (1992)**

**The Validity of Similar Letter Substitution in an Adolescent Population, presented to the American Society of Questioned Document Examiners, Chicago, Illinois (1995)**

**INSTRUCTOR OF WORKSHOP**

**Manufacturing Processes of Seals, Instructor of half-day session in Rubber Stamps and Seals at the American Society of Questioned Document Examiners, Ottawa, Canada (2000)**

## PROFESSIONAL AFFILIATIONS:

**The American Academy of Forensic Sciences**
**Northeastern Association of Forensic Scientists**

## COURT TESTIMONY:

**State and Federal Courts, hearing boards, and other adversary proceedings in Massachusetts, Connecticut, New Hampshire, Maine, Vermont and Florida**

**(Revised September 27, 2004)**

# COURT TESTIMONY

| | | |
|---|---|---|
| June 11, 2001<br>MA | District Court of East Boston<br>Judge Daniel Klubock<br>Re:     Pepe<br>Vs.     George's Auto Body | Civil<br>Signature |
| June 15, 2001<br>MA | Suffolk Superior Court<br>Judge Judith Fabricant<br>Re:     Avenue Realty Trust<br>Vs.     Little Feats Children Center | Civil<br>Fabricated<br>Document |
| June 21, 2001<br>NH | Hillsborough County Superior Court<br>Master Peter Bourque<br>Re:     Shelley Cannon<br>Vs.     Frederick Fedderson | Civil<br>Anonymous<br>Writing |
| October 9, 2001<br>NH | Stafford County Superior Court<br>Judge Bruce Mohl<br>Re:     State of New Hampshire<br>Vs.     David Sullivan | Criminal<br>Anonymous<br>Writing |
| November 7, 2001<br>MA | District Court of Lowell<br>Re:     Richardson<br>Vs.     Morin | Civil<br>Signature |
| September 5, 2002<br>NH | Strafford County Superior Court<br>Judge Peter H. Fauver<br>Re:     James F. Corpening<br>Vs.     Champion Mortgage Co., Inc., et al | Civil<br>Signature |
| March 13, 2003<br>MA | Middlesex Probate Court<br>Judge Gregory V. Roach<br>Re:     Estate of Genevieve Franco | Civil<br>Signature |
| April 1, 2004 | Strafford County Superior Court<br>Deposition<br>Re:     Daniel Raposa, executor<br>          Estate of Jamie Raposa<br>Vs.     Herbert Clark, O.D. and<br>          Laurice Jackson, MD<br>Attorney:  Elizabeth Mulvey<br>               David Suchecki | Medical<br>Record |

# CUSACK AND McCARTHY
## FORENSIC DOCUMENT EXAMINERS
### 268 MAIN STREET, PMB 178
### NORTH READING, MASSACHUSETTS 01864-1390

———

### Tel: (978) 276-1963
### Fax: (978) 276-1964

March 18, 2005

Richard B. Couser, Esquire
D'Amante Couser Steiner Pellerin, P.A.
Box 2650
Concord, NH 03302-2650

> Re:    Great American Insurance Company
> Vs.    Allen Interior Systems, Inc., DRN, Inc., d/b/a Northern Interior Systems,
> Guy Allen and Serge Roy
> Civil Action Number: 04 10756 MEL

## REPORT

## IN QUESTION

Signature "Guy Allen" on three documents more fully described as follows:

- **Q1:** One (1) original Great American Insurance Companies – Agreement of Indemnity dated April 9, 2002 bearing three signatures of Guy Allen on page 6.

- **Q2:** One (1) original Non Transfer of Assets Agreement dated April 9, 2002 bearing two signatures of Guy Allen.

- **Q3**: One (1) original Resolution (To be used with Agreement of Indemnity) dated May 23, 2002 bearing one signature of Guy Allen.

## KNOWN DOCUMENTS

Undisputed signatures of Guy Allen appearing on documents more fully described as follows: All the signatures are original inked signatures unless otherwise noted.

- **K1a and K1b:** Two (2) Pro Con Construction Agreements each dated January 21, 2002 for Job No. 201369, Task No. 09250.

Richard B. Couser, Esquire
D'Amante Couser Steiner Pellerin, P.A.
March 18, 2005
Page Two of Five

- **K2:** One (1) Pro Con Construction Agreement dated May 2, 2002 for Job No. 501301, Task No. 9250.
- **K3:** One (1) Larry Fournier invoice #13 dated May 13, 2002. (check reference #2724)
- **K4:** One (1) Joe Kodesh invoice, undated. (check reference #2679)
- **K5:** One (1) Construction Resources, Inc. invoice #127 dated April 21, 2002. (check reference #2610)
- **K6:** One (1) Michael Frechette invoice dated April 21, 2002. (check reference #2617)
- **K7:** One (1) Joe Kodesh invoice, undated. (check reference #2551)
- **K8:** One (1) Scott Gardner invoice #77004 dated April 7, 2002. (check reference #2545)
- **K9:** One (1) Robert Gardner invoice #76103 dated April 7, 2002. (check reference #2542 )
- **K10:** One (1) Michael Frechette invoice dated April 7, 2002. (check reference #2535)
- **K11:** One (1) Arthur Curtis invoice #77052 dated April 7, 2002. (check reference #2520)
- **K12:** One (1) Arthur Curtis invoice #76102, undated. (check reference # 2474)
- **K13:** One (1) Scott Gardner invoice, undated. (check reference #2398)
- **K14:** One (1) Robert Gardner invoice, undated (check reference #2394)
- **K15:** One (1) Randell S. Bullis invoice, undated (check reference #2391)
- **K16:** One (1) Larry Fournier invoice #6 dated March 17, 2002. (check reference #2381)
- **K17:** One (1) Bruce Bernier invoice #480662 dated March 16, 2002. (check reference #2364)
- **K18:** One (1) Jason Fernald invoice, undated. (check reference #2305)
- **K19:** One (1) James Berryman invoice, dated March 10, 2002. (check reference #2304)
- **K20:** One (1) Evan A. Bergeron invoice #338554 dated March 10, 2002. (check reference #2298)
- **K21:** One (1) Al Bergeron invoice, undated. (check reference #2288)
- **K22:** One (1) Roland Duquette invoice #443410, dated March 1, 2002. (check reference #2276) The signature of Guy Allen is a photocopy.
- **K23:** One (1) Andre Allen invoice #1093 dated February 17, 2002. (check reference #2112) The signature of Guy Allen is a photocopy.
- **K24:** One (1) Andre Allen invoice #1092 dated February 10, 2002. (check reference #2066)
- **K25:** One (1) Andre Allen invoice #1091 dated February 3, 2002. (check reference # 2013) The signature of Guy Allen is a photocopy

Richard B. Couser, Esquire
D'Amante Couser Steiner Pellerin, P.A.
March 18, 2005
Page Three of Five

The Knowns were reviewed for internal consistency and any material that might be from another source was not considered further in comparison to the questioned material.

## PURPOSES OF THE EXAMINATION

The purposes of the examination were to determine, if possible, whether one or more of the Guy Allen signatures is a facsimile signature stamp or an original inked signature. And, if it is concluded that any of the questioned signatures is an original inked signature determine, if possible, whether or not Guy Allen signed his name to the document in question.

## NATURE OF THE EXAMINATION

The nature of the examination was non-destructive. The questioned and known documents were studied at various degrees of magnification with the aid of a stereoscopic microscope and hand magnifiers utilizing transmitted, incident and oblique illumination as appropriate. Images of certain items submitted were also scanned into a computer.

During this examination different aspects of the problem presented were analyzed. During each phase, the reliable principles and methods of forensic document examination were applied in accordance with the standard practices and procedures of the field.

The examination involved looking for features of stamped impressions such as absorption of the ink into the paper fibers; variation in the uniformity of the inking; squeegee effect; feathering of ink; total saturation of ink through the paper; lack of impression or indentation in the paper and the absence of debris surrounding the individual letters (a feature commonly observed in inkjet or laser printer and photocopier processes).

Among the features considered in the examination, comparison, and evaluation of the questioned and known writings were elements of the writing including abbreviation; alignment; arrangement, formatting, and positioning; capitalization; continuity of line; cross strokes and dots, diacritics and punctuation; direction of strokes; disguise; eliding or slurring; embellishments; formation; freedom of execution; handedness; legibility; line quality; method of production; overall pressure and patterns of pressure emphasis; proportion; simplification; size; skill; slant or slope; spacing; speed; initial, connecting, and terminal strokes; system; tremor; type of writing; and range of variation. The examination also involved looking for other features such as lifts, stops and hesitations of the writing instrument; patching and retouching; slow, drawn quality of the line; unnatural tremor; and guide lines of various forms (features often associated with simulated or imitated writing).

Richard B. Couser, Esquire
D'Amante Couser Steiner Pellerin, P.A.
March 18, 2005
Page Four of Five


## FINDINGS

The examination of Q1 and Q2 under magnification revealed signs of ink absorption into the paper fibers; variation in the uniformity of the inking; squeegee effect; feathering of ink; and partial saturation of ink through the paper. No impression or indentation of the signature was found in the paper nor was there any evidence of debris surrounding the individual letters.

The examination of Q3 under magnification revealed the signature was written with a black ball point pen. Numerous signs of a freely executed writing such as tapered beginning and ending of strokes, and pressure variation within letters was observed. This examination did not reveal any unusual pen lifts, stops, points of hesitation, patching or drawn quality of writing of the sort associated with imitated writing. These findings are strong indicators of natural writing.

The examination of the known signatures of Guy Allen revealed a stylized, signature consisting primarily of the letters G, y, A and ll. Although truncated the handwriting exhibited a number of significant individualizing characteristics. While there is natural variation; the habits of movement and form persist throughout the Knowns.

Significant differences were noted in the comparison of Q3 to the Knowns. Each distinguishable letter form (G, y, A and ll) is different from the Knowns in one or more aspects. This major difference of handwriting style indicates that the Q3 signature was not a serious attempt at simulating Mr. Allen's handwriting.


## CONCLUSIONS

The examination of Q1 and Q2 lead to the determination that the five signatures of Guy Allen evidenced on the documents were produced with a facsimile signature stamp.

The examination, comparison and evaluation of the Guy Allen signature appearing on Q3 and the Knowns lead to the determination that the Guy Allen of the Knowns did not write the Guy Allen signature appearing on Q3.


## QUALIFICATIONS

Please see the attached curriculum vitae.

Richard B. Couser, Esquire
D'Amante Couser Steiner Pellerin, P.A.
March 18, 2005
Page Five of Five

## PUBLICATIONS

"Seals" (pp. 3 – 24) in *Forensic Examination of Rubber Stamps*, Jan Seamen Kelly, Springfield, Illinois, Charles C. Thomas – Publisher, Ltd., 2002

A Comparison Study of the Handwriting of Adolescents, co-authored with John Hargett, Chief Document Examiner - U. S. Secret Service; published Forensic Science International, August, 1989, Vol. 42, pp. 239-248

## COMPENSATION

My rate is $175.00/hour.  I have yet to bill for the examination, travel, expenses, consultations with counsel and the writing of this report.  Future services will be billed at the rate of $175.00/hour.

## PRIOR TESTIMONY

Please see attached list of prior testimonies.

## DEMONSTRATION CHARTS

The attachments to this report will be used for demonstration purposes at the time of trial. Other charts depicting the evidence may also be produced at that time.

Respectfully submitted,

Christine T. Cusack

//Couser, Richard (report)

## ATTACHMENTS

- **Q1:** Three signatures of Guy Allen marked as follows:

  Figure:     Q1a, Q1b and Q1c: Guy Allen, president
  Q1d, Q1e, and Q1f: Guy Allen, witness to Serge Roy
  signature
  Q1g, Q1h and Q1i:  Guy Allen, individually

- **Q2:** Two signatures of Guy Allen marked as follows:

  Figure:     Q2a, Q2b and Q2c: Guy Allen, president
  Q2d, Q2e, and Q2f: Guy Allen, individually

- **Q3:** Enlarged Comparison Chart of the questioned signature
  and Knowns of Guy  Allen.



Q1a:    "Guy" portion of Q1 questioned signature as president of Allen Interiors



Q1b:   "Allen" portion of Q1 questioned signature as president of Allen Interiors



Q1c:   Guy Allen signature as evidenced from reverse side of the questioned document.



Q1d:   "Guy" portion of Q1 questioned signature as witness



Q1e:  "Allen" portion of Q1 questioned signature as witness.



Q1f:    Guy Allen signature as evidenced from reverse side of the questioned document.



Q1g:   "Guy" portion of Q1 questioned signature as Individually.



Q1h:   "Allen" portion of Q1 questioned signature as Individually.



Q1i:    Guy Allen signature as evidenced from reverse side of the questioned document.



Q2a:    "Guy" portion of Q2 questioned signature as President of Allen Interior



Q2b:   "Allen" portion of Q2 questioned signature as President of Allen Interior



Q2c:    Guy Allen signature as evidenced from reverse side of the questioned document.



Q2d:   "Guy" portion of Q2 questioned signature as Individually.



Q2e:  "Allen" portion of Q2 questioned signature as Individually.



Q2f:    Guy Allen signature as evidenced from reverse side of the questioned document.

# ENLARGED COMPARISON CHART

**IN QUESTION**



Secretary

**Q3**

**KNOWN**



By
Subcontractor

**K1a**



By:
Subcontractor

**K1b**



By
Subcontractor

**K2**



**K8**



**K9**