# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GREAT AMERICAN INSURANCE
COMPANY,
          Plaintiff,
v.

ALLEN INTERIOR SYSTEMS, INC.,
DRN, INC. d/b/a NORTHERN
INTERIOR SYSTEMS, GUY ALLEN, and
SERGE ROY,
          Defendants,

ALLEN INTERIOR SYSTEMS, INC., and
GUY ALLEN,
          Counterclaimants,

v.

SERGE ROY, and DRN, INC. d/b/a
NORTHERN INTERIOR SYSTEMS,
          Counterdefendants.

Civil Action No. 04-10756 (MEL)

## PLAINTIFF GREAT AMERICAN INSURANCE COMPANY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS ALLEN INTERIOR SYSTEMS, INC. AND GUY ALLEN

Pursuant to Rule 56, Fed.R.Civ.P., Plaintiff Great American Insurance Company ("Great Americarn") hereby submits its opposition to the Motion for Summary Judgment filed by Defendants Allen Interior Systems, Inc. and Guy Allen (the "Allen Defendants"). Great American opposes summary judgment on the grounds that questions of material fact exist with respect to the Allen Defendants' liability; particularly with respect to the execution of the Agreement of Indemnity which is the

subject of this action. In support of this opposition, Great American hereby incorporates the accompanying Controverting Statement of Material Facts in Opposition to Summary Judgment, and the Affidavit of Ed Kirsch.

## I.    <u>BACKGROUND</u>

At all times relevant to this action, Great American has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects. <u>See</u> <u>Great American's Controverting Statement of Material Facts</u> (hereinafter "SOF") at ¶ 21, filed herewith. Attached as <u>Exhibit A</u> to the Complaint underlying this action is a true and accurate copy of an Agreement of Indemnity (the "Indemnity Agreement") dated April 9, 2002, the terms of which obligate the Allen Defendants, among others, to indemnify and hold harmless Great American from, among other things, any and all losses associated with those performance and payment bonds issued by Great American on behalf of the indemnitors. SOF at ¶ 22.

As a direct and proximate result of the Allen Defendants executing the Indemnity Agreement, and in reliance thereon, Great American executed various subcontract performance and payment bonds (the "Bonds") at the request and on behalf of Defendant Allen Interior Systems, Inc. ("Allen Interior Systems"), Defendant DRN, Inc. d/b/a Northern Interior Systems ("Northern"), and non-party State Line Drywall, Inc. ("State Line"). SOF at ¶ 23. In issuing the aforementioned Bonds, Great American relied on the Allen Defendants' commitment, as set forth in the Indemnity Agreement,

to indemnify and hold Great American harmless from any and all losses associated with having issued the Bonds. SOF at ¶ 24.

In February of 2004, Allen Interior Systems' co-indemnitors, Northern and State Line, defaulted on several of the construction projects bonded by Great American pursuant to the Indemnity Agreement. SOF at ¶ 25. As a direct and proximate result of the defaults, Great American has sustained substantial losses in the form of costs to complete the bonded projects and satisfy legitimate claims on the Bonds, as well as attorneys' fees, expenses, and interest (the "Bonded Losses"). SOF at ¶ 26. Great American's Bonded Losses are expressly covered by the Indemnity Agreement executed by the Allen Defendants. SOF at ¶ 27.

Despite having benefited directly from the Bonds, and contrary to the express provisions of the Indemnity Agreement, the Allen Defendants now deny their indemnity obligation to Great American with respect to the Bonded Losses. SOF at ¶ 28. In support of this argument, the Allen Defendants claim, among other things, that: (1) the Allen Defendants did not agree to indemnify Great American; (2) the signatures of Guy Allen on the Indemnity Agreement and supporting documents on behalf of the Allen Defendants are "facsimile signatures"; (3) Guy Allen did not authorize the use of the "facsimile signatures" on the Indemnity Agreement and supporting documents; (4) Guy Allen was not aware that "facsimile signatures" had been used to execute the Indemnity Agreement and supporting documents; (5) co-indemnitor Serge Roy was not authorized to execute the Indemnity Agreement and supporting documents on behalf of Allen Interior Systems, Inc.; (6) Guy Allen was the only person ever authorized to act

on behalf of Allen Interior Systems, Inc.; and (7) Guy Allen had never seen the Indemnity Agreement or supporting documents until copies were provided by Great American in 2004. SOF at ¶ 29. On the basis of the foregoing claims, the Allen Defendants maintain that they are not bound by the Indemnity Agreement, and are therefore entitled to summary judgment herein. SOF at ¶ 30.

Notably, the Allen Defendants previously made this identical argument in support of summary judgment on or about September 30, 2004. SOF at ¶ 31. In response, the Court denied the Allen Defendants' original motion for summary judgment on or about November 10, 2004. SOF at ¶ 32. In denying the motion, the Court found that "Federal questions exist as to whether the moving defendants are liable as indemnitors … [s]uch questions include: who signed the indemnity agreement; was the signing authorized; etc." SOF at ¶ 33. Since that time, the parties have engaged in written discovery. SOF at ¶ 34. Nonetheless, the Allen Defendants have not made any subsequent showing that the questions of material fact previously identified by this Court have been resolved. SOF at ¶ 35. Instead, the Allen Defendants have merely renewed their prior motion, in the face of the same unresolved issues. SOF at ¶ 36. As set forth herein, Great American respectfully asserts that, consistent with the Court's prior ruling, genuine issues of material fact exist that preclude summary judgment in favor of the Allen Defendants.

## II.    LAW AND ARGUMENT

### A.    Genuine Issues of Material Fact Regarding Execution of the Indemnity Agreement Preclude Summary Judgment.

In determining whether summary judgment is appropriate, the Court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party. See Hahn v. Sargent, 523 F.2d 461 (1st Cir. 1975). To defeat a motion for summary judgment, the party opposing summary judgment must establish the existence of an issue of fact which is both 'genuine' and 'material.' Id. A material issue is one which affects the outcome of the litigation. Id.

As noted previously, this Court has acknowledged the existence of genuine issues of material fact precluding summary judgment. These issues include, but are not limited to: (1) Guy Allen's Execution of the Indemnity Agreement on behalf of the Allen Defendants; (2) the authority of those other than Guy Allen to execute the Indemnity Agreement on behalf of the Allen Defendants; and (3) the Allen Defendants' knowledge of their indemnity obligation. As the foregoing questions go to the heart of the dispute between Great American and the Allen Defendants, it is beyond debate that such questions are material to this action. Moreover, it is evident from the record that bona fide disputes exist with respect to the Allen Defendants' execution of the Indemnity Agreement, and their knowledge of the corresponding obligation to Great American. As set forth above, the issues in dispute include, but are not limited to, the following:

### 1.    Guy Allen's Signature on the Indemnity Agreement.

A review of the Indemnity Agreement (attached to Great American's Complaint as Exhibit A) reveals the signatures of Guy Allen on behalf of himself and Allen Interior

Systems, Inc.  SOF at ¶ 37.  Mr. Allen's signature is attested and notarized as confirmation of his personal execution of the documents in question.  SOF at ¶ 38. Although the signatures speak for themselves, the Allen Defendants claim that the signatures are "facsimile signatures," affixed to the Indemnity Agreement without the authority of either Guy Allen or Allen Interior Systems, Inc.  This conflict of fact alone precludes summary judgment, as Allen's position raises numerous questions of material fact, including: (1) are the signatures the product of a facsimile stamp? (2) If so, did Guy Allen employ such a stamp himself; or (3) did Guy Allen authorize the use of such a stamp?[1]  As previously acknowledged by the Court, the questions of material fact raised by the foregoing clearly preclude summary judgment.

2.     <u>The Authority of Those Other than Guy Allen to Execute the Indemnity Agreement on Behalf of the Allen Defendants.</u>

Similarly, the record demonstrates additional questions of material fact with respect to whether or not individuals other than Guy Allen may have been authorized to employ such a signature stamp on behalf of the Allen Defendants.  The Indemnity Agreement is executed by Defendant Serge Roy as the Vice President of Allen Interior Systems, Inc.  SOF at ¶ 40.  Similarly, the Non-Transfer of Assets Agreement accompanying the Indemnity Agreement bears the signatures of both Guy Allen and Serge Roy, and identifies Mr. Roy as Vice President of Allen Interior Systems, Inc.  SOF at ¶ 41.  Contrary to the foregoing, however, the Allen Defendants maintain that Serge Roy has never been the Vice President of Allen Interior Systems, Inc., and was not

---

[1]  Notably, the Allen Defendants have acknowledged that no-one in particular had specific responsibility for custody or control of the signature stamp. SOF at ¶ 39.

authorized to execute the documents in question.[2]    See <u>Affidavit of Guy Allen in Support of Motion for Summary Judgment</u>, ¶ 3.

With respect to the issue of authority, the record raises further questions concerning the scope of authority exercised by Brenda Smith on behalf of the Allen Defendants.  The Allen Defendants' interrogatory responses indicate that Brenda Smith was authorized to use the alleged signature stamp, and in fact had employed such a stamp on behalf of Allen Interior Systems, Inc.  SOF at ¶ 43.  Brenda Smith also notarized the signatures of Guy Allen on the Indemnity Agreement and, as set forth below, her signature appears on bonds issued by Great American on behalf of Allen Interior Systems immediately following execution of the Indemnity Agreement.  SOF at ¶ 44.

Again, the foregoing demonstrates issues of material fact as to the authority of those other than Guy Allen to execute the indemnity documents on behalf of the Allen Defendants.  As such a dispute goes to the ultimate issue to be resolved in this action, summary judgment is precluded.

    3.   <u>The Allen Defendants' Knowledge of their Indemnity Obligation.</u>

The Allen Defendants maintain that they were not aware of any indemnity obligation until notified by Great American following the defaults in 2004.  The Allen Defendants' claim in this regard is contradicted by the facts.  As an initial matter, Guy Allen's claim that he was not aware of the Indemnity Agreement is inconsistent with

---

[2] <u>Exhibit F</u> to the <u>Affidavit of Guy Allen</u> contains Minutes from the Organizational Meeting of the Board of Directors of Allen Interior Systems, Inc. of May 11, 2000.  Notably, Guy Allen is identified as holding

statements Mr. Allen made to Ed Kirsch of Great American during a telephone conversation that took place on March 2, 2004. SOF at ¶ 45. During this telephone conversation, Mr. Allen made contradicting statements regarding his execution of the Indemnity Agreement. SOF at ¶ 46. Specifically, Mr. Allen first stated that he executed the Indemnity Agreement to obtain a bond from Great American. SOF at ¶ 47. Thereafter, Mr. Allen stated that he did not know about the Indemnity Agreement. SOF at ¶ 48. Mr. Allen's own contradicting statements of March 2, 2004 create sufficient questions of fact to preclude summary judgment.

Furthermore, a review of correspondence authored by Mr. Allen on or about February 27, 2004 reveals additional statements evidencing Mr. Allen's acknowledgement of his obligations to Great American. SOF at ¶ 49. Specifically, Mr. Allen wrote to Great American's Ed Kirsch in connection with Allen's offer to complete the remaining work on the bonded projects abandoned by co-indemnitor Northern. SOF at ¶ 50. As a contingency to complete the projects abandoned by Northern, Allen requested that Great American agree that "Guy Allen nor Allen Interior Systems will be held responsible for any further liability or law suit [sic] that might arise or have arisen for Northern Interior Systems having pulled off of these projects." SOF at ¶ 51. Allen's request raises several questions, including: (1) why would Allen offer to complete projects abandoned by Northern in the absence of a joint indemnity obligation? and (2) why would Allen specifically request a release from "further liability" to Great

---

every office of Allen Interior Systems, Inc. with the sole exception of Vice President. SOF at ¶ 42.

American in the absence of such an indemnity obligation in the first place?  Such questions of material fact preclude summary judgment.

Similarly, Guy Allen submitted a Personal Financial Statement, executed with Guy Allen's original signature, and supporting documents to Great American on or about December 2, 2003 for the purpose of securing additional bonds on behalf of Allen Interior Systems.  SOF at ¶ 52.[3]  The submission of such a *Personal* Financial Statement evidences Guy Allen's knowledge of his pre-existing *personal* indemnity obligation to Great American.  If Guy Allen was not personally bound to Great American, why would he submit a Personal Financial Statement in pursuit of further bonds?

Mr. Allen further submitted two Work-On-Hand Schedules for Great American's consideration, a careful review of which reveals what appear to be the same "facsimile signatures" alleged by the Allen Defendants to appear on the Indemnity Agreement.  SOF at ¶ 54.  To the extent the alleged signature stamp was employed with respect to both the Indemnity Agreement and the Work-On-Hand Schedules, such a use establishes a course of conduct on the part of Mr. Allen to submit documents to Great American, in support of requested bonding, executed on behalf of the Allen Defendants with the alleged signature stamp.  At a minimum, the issues raised concerning the Personal Financial Statement and work-on-hand schedules are sufficiently material and disputed to preclude summary judgment.

4.    The Relationship Between the Co-Indemnitors.

---

[3] In reliance on the Indemnity Agreement and the Personal Financial Statement, Great American issued additional bonding to Allen Interior Systems.  SOF at ¶ 53.

Significant questions also persist regarding the relationship between Allen Interior Systems and its co-indemnitors, Northern and Stateline.  The Allen Defendants have taken the position in this litigation that the defaults from which the Bonded Losses arise do not involve projects on which work was performed by Allen Interior Systems.  As an initial matter, the co-indemnity obligation established by the Indemnity Agreement obviates Allen's position in this regard.  Nonetheless, when considered in light of Allen's claim that he was not aware of the indemnity obligation, it is important to note that Allen Interior Systems provided both manpower and financial support to the projects ultimately abandoned by Northern and State Line.  SOF at ¶ 55.  For example, Allen Interior Systems supplied a project superintendent to a Northern project located in Connecticut.  SOF at ¶ 56.  Allen Interior Systems also remitted payment to at least one subcontractor of State Line, in connection with a State Line project in Manchester.  SOF at ¶ 57.  Specifically, Allen Interior Systems paid $47,700.00 to State Line subcontractor Island International on or about December 23, 2003.  SOF at ¶ 58.  A review of the check[4], and the accompanying Application and Certification for Payment, confirms that the payment pertains to State Line's Manchester project, and that Island International contracted with State Line, not Allen Interior Systems.  SOF at ¶ 59.  Upon information and belief, Allen Interior Systems was not directly responsible for the Manchester project in any manner.  SOF at ¶ 60.  Nonetheless, Allen Interior

---

[4]  A careful review of the check reveals that it may have been executed by the same alleged signature stamp.  Further indication of Allen Interiors' prolific use of such a stamp in its regular course of business, and further raising questions of material fact as to whether such prolific use included execution of the Indemnity Agreement.

Systems satisfied the payables of its co-indemnitor State Line with respect to this project. SOF at ¶ 61.

This significant involvement of Allen Interior Systems on projects for which its co-indemnitors were responsible is indicative of a joint undertaking amongst the indemnitors on the bonded projects. SOF at ¶ 62. Such a joint undertaking raises questions of material fact with respect to  the precise relationship between the indemnitors, as well as the bearing such relationship has on Allen's claim that he was unaware of the collective indemnity obligation of Allen Interior Systems, Northern and State Line.

These questions are further exacerbated by the existence of three (3) Resolutions accompanying the Indemnity Agreement.  The Resolutions, executed by the principals of each co-indemnitor, including Guy Allen, indicate that Allen Interior Systems, Northern, and State Line are "materially interested by reason of common ownership" in securing indemnity from Great American. SOF at ¶ 63.  In light of these Resolutions, and the aforementioned material support provided by Allen Interior Systems to the projects of its co-indemnitors, it is clear that questions of material fact exist with respect to the Allen Defendants' knowledge of the indemnity obligation to Great American.

5.     <u>Allen Interior Systems Received the Benefit of Bonds from its<br>Indemnity Obligation to Great American.</u>

Finally, it should be noted that, notwithstanding projects bonded on behalf of Allen's co-indemnitors, Great American issued several bonds directly on behalf of Allen Interior Systems. SOF at ¶ 64.  Through discovery, the Allen Defendants acknowledge having received bonds on two projects: (1) Brooksby Village, issued on April 26, 2002;

and (2) Concord Hospital Cancer Center, issued on May 6, 2002. SOF at ¶ 65. Notably, both bonds were issued immediately following the Allen Defendants' execution of the Indemnity Agreement on April 9, 2002. SOF at ¶ 66. At a minimum, Allen's acknowledged receipt of these bonds, and the timing of their issuance on the heels of the execution of the Indemnity Agreement, raises material questions of fact with respect to the scope and timing of the Allen Defendants' knowledge of their indemnity obligation to Great American. Such issues of material fact preclude summary judgment.

As previously acknowledged by the Court, the foregoing issues, viewed in a light most favorable to Great American, demonstrate the existence of numerous material facts in dispute. On this basis, Great American respectfully asserts that the Allen Defendants are not entitled to summary judgment herein.

**B.    Great American's Claim is not Barred by the Statute of Frauds.**

The Allen Defendants maintain that Great American has failed to satisfy the relevant statute of frauds, M.G.L. c. 259, § 1. As an initial matter, the existence of the Indemnity Agreement satisfies the requirements of M.G.L. c. 259, § 1. As set forth above, the Allen Defendants' execution of such writing is a factual question, and the primary issue in dispute. As this material issue is in dispute, summary judgment with respect to the Allen's statute of frauds defense is unavailable.

**C.    Further Discovery is Necessary Regarding Execution of the Indemnity Agreement.**

Although the parties have completed written discovery, no depositions have been taken in connection with this matter. Great American refrained from conducting

the three to four depositions necessary in an effort to minimize the parties' litigation costs while settlement was being discussed with the Allen Defendants. Great American anticipates being able to complete the necessary depositions over the course of two to three days. However, one of the deponents, Serge Roy, resides in Canada, therefore securing Mr. Roy's attendance at a deposition may require reasonable advance notice. Nonetheless, Great American will take immediate steps to either secure opposing counsel's assent to conducting such depositions, or seek leave of the Court to modify the discovery schedule accordingly.

Pursuant to Rule 56(f), and to the extent necessary, Great American hereby reserves its right to supplement this opposition with additional questions of fact it anticipates will ultimately be raised through the contemplated depositions.

III.     **CONCLUSION**

WHEREFORE, Great American respectfully requests that this Honorable Court deny the Allen Defendants' Motion for Summary Judgment, and grant Great American such other and further relief as justice may require.

Respectfully Submitted,
**GREAT AMERICAN
INSURANCE COMPANY**
By its attorneys,

/s/ Jonathan C. Burwood
_____
Bradford R. Carver, BBO #565396
Jonathan C. Burwood, BBO #643674
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 213-7000

Date:  December 14, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan C. Burwood, BBO #643674, hereby certify that on this 14th day of December, 2005, I caused a true and accurate copy of the above to be served via first class mail, postage prepaid, and/or electronic filing, on the following counsel of record:

William S. Gannon, Esq.                    David W. Carr, Esq.
889 Elm Street                             4 Newman Way
Manchester, NH 03101                       Arlington, MA 02174

Richard B. Couser, Esq.
D'Amante Couser Steiner Pellerin, P.A.
Nine Triangle Park Drive
P.O. Box 2650
Concord, NH 03302-2650


                                   /s/ Jonathan C. Burwood
                                   _____
                                   Jonathan C. Burwood, BBO #643674
                                   Hinshaw & Culbertson LLP
                                   One International Place, 3rd Floor
                                   Boston, MA 02110
                                   (617) 213-7000

34016113v1 856557