## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, <br>     Plaintiff, <br> v. <br><br> ALLEN INTERIOR SYSTEMS, INC., DRN, INC. d/b/a NORTHERN INTERIOR SYSTEMS, GUY ALLEN, and SERGE ROY, <br>     Defendants, <br><br> ALLEN INTERIOR SYSTEMS, INC., and GUY ALLEN, <br>     Counterclaimants, <br><br> v. <br><br> SERGE ROY, and DRN, INC. d/b/a NORTHERN INTERIOR SYSTEMS, <br>     Counterdefendants. | Civil Action No. 04-10756 (MEL) |

### AFFIDAVIT OF ED KIRSCH

I, Ed Kirsch, being duly sworn, hereby depose and state as follows:

1.  I am a claims consultant for Plaintiff Great American Insurance Company ("Great American"). I have full authority to adjust, manage, and prosecute the claims of Great American with respect to this litigation. I make the statements that follow on personal knowledge, or on the basis of the business records of Great American with respect to this matter, of which I am the keeper.

2. At all times relevant to this action, Great American has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

3. The Agreement of Indemnity (the "Indemnity Agreement") dated April 9, 2002, obligates the Allen Defendants, among others, to indemnify and hold harmless Great American from, among other things, any and all losses associated with those performance and payment bonds issued by Great American on behalf of the indemnitors.

4. As a direct and proximate result of the Allen Defendants executing the Indemnity Agreement, and in reliance thereon, Great American executed various subcontract performance and payment bonds (the "Bonds") at the request and on behalf of Defendant Allen Interior Systems, Inc. ("Allen Interior Systems"), Defendant DRN, Inc. d/b/a Northern Interior Systems ("Northern"), and non-party State Line Drywall, Inc. ("State Line").

5. In issuing the aforementioned Bonds, Great American relied on the Allen Defendants' commitment, as set forth in the Indemnity Agreement, to indemnify and hold Great American harmless from any and all losses associated with having issued the Bonds.

6. In February of 2004, Allen Interior Systems' co-indemnitors, Northern and State Line, defaulted on several of the construction projects bonded by Great American pursuant to the Indemnity Agreement.

7. As a direct and proximate result of these defaults, Great American has sustained substantial losses in the form of costs to complete the bonded projects and satisfy legitimate claims on the Bonds, as well as attorneys' fees, expenses, and interest (the "Bonded Losses").

8. Great American's Bonded Losses are expressly covered by the Indemnity Agreement executed by the Allen Defendants.

9. Despite having benefited directly from the Bonds, and contrary to the express provisions of the Indemnity Agreement, the Allen Defendants now deny their indemnity obligation to Great American with respect to the Bonded Losses.

10. The Allen Defendants claim, among other things, that: (1) the Allen Defendants did not agree to indemnify Great American; (2) the signatures of Guy Allen on the Indemnity Agreement and supporting documents on behalf of the Allen Defendants are "facsimile signatures"; (3) Guy Allen did not authorize the use of the "facsimile signatures" on the Indemnity Agreement and supporting documents; (4) Guy Allen was not aware that "facsimile signatures" had been used to execute the Indemnity Agreement and supporting documents; (5) co-indemnitor Serge Roy was not authorized to execute the Indemnity Agreement and supporting documents on behalf of Allen

Interior Systems, Inc.; (6) Guy Allen was the only person ever authorized to act on behalf of Allen Interior Systems, Inc.; and (7) Guy Allen had never seen the Indemnity Agreement or supporting documents until copies were provided by Great American in 2004.

11. The Allen Defendants maintain that they are not bound by the Indemnity Agreement, and are therefore entitled to summary judgment herein.

12. The Allen Defendants previously made this identical argument in support of summary judgment on or about September 30, 2004.

13. In response, the Court denied the Allen Defendants' original motion for summary judgment on or about November 10, 2004.

14. In denying the motion, the Court found that "Federal questions exist as to whether the moving defendants are liable as indemnitors … [s]uch questions include: who signed the indemnity agreement; was the signing authorized; etc."

15. Since that time, the parties have engaged in written discovery.

16. The Allen Defendants have not made any subsequent showing that the questions of material fact previously identified by this Court have been resolved.

17. The Allen Defendants have merely renewed their prior motion, in the face of the same unresolved issues.

18. A review of the Indemnity Agreement reveals the signatures of Guy Allen on behalf of himself and Allen Interior Systems, Inc.

19. Mr. Allen's signature is attested and notarized as confirmation of his personal execution of the documents in question.

20. The Allen Defendants have acknowledged that no-one in particular had specific responsibility for custody or control of the signature stamp.

21. The Indemnity Agreement is executed by Defendant Serge Roy as the Vice President of Allen Interior Systems, Inc.

22. The Non-Transfer of Assets Agreement accompanying the Indemnity Agreement bears the signatures of both Guy Allen and Serge Roy, and identifies Mr. Roy as Vice President of Allen Interior Systems, Inc.

23. <u>Exhibit F</u> to the <u>Affidavit of Guy Allen</u> contains Minutes from the Organizational Meeting of the Board of Directors of Allen Interior Systems, Inc. of May 11, 2000. Guy Allen is identified as holding every office of Allen Interior Systems, Inc. with the sole exception of Vice President.

24. The Allen Defendants' interrogatory responses indicate that Brenda Smith was authorized to use the alleged signature stamp, and in fact had employed such a stamp on behalf of Allen Interior Systems, Inc. See Guy Allen's Response to Great American's First Set of Interrogatories, attached hereto as <u>Exhibit A</u>, ¶¶ 8(c), 8(e).

25. Brenda Smith also notarized the signatures of Guy Allen on the Indemnity Agreement, and her signature appears on bonds issued by Great American on behalf of Allen Interior Systems immediately following execution of the Indemnity Agreement.

26. Guy Allen's claim that he was not aware of the Indemnity Agreement is inconsistent with statements Mr. Allen made to me during a telephone conversation

that took place on March 2, 2004. See Notes of Ed Kirsch dated March 2, 2004, attached hereto as <u>Exhibit B</u>.

27.     During this telephone conversation, Mr. Allen made contradicting statements regarding his execution of the Indemnity Agreement. <u>Id</u>.

28.     Mr. Allen first stated that he executed the Indemnity Agreement to obtain a bond from Great American. <u>Id</u>

29.     Thereafter, Mr. Allen stated that he did not know about the Indemnity Agreement. <u>Id</u>.

30.     A review of correspondence authored by Mr. Allen on or about February 27, 2004 reveals additional statements evidencing Mr. Allen's acknowledgement of his obligations to Great American. See Letter from G. Allen to E. Kirsch dated February 27, 2004, attached hereto as <u>Exhibit C</u>.

31.     Specifically, Mr. Allen wrote to me in connection with Allen's offer to complete the remaining work on the bonded projects abandoned by co-indemnitor Northern. <u>Id</u>.

32.     As a contingency to complete the projects abandoned by Northern, Allen requested that Great American agree that "Guy Allen nor Allen Interior Systems will be held responsible for any further liability or law suit [sic] that might arise or have arisen for Northern Interior Systems having pulled off of these projects." <u>Id</u>.

33.     Guy Allen submitted a Personal Financial Statement to Great American on or about December 2, 2003. See Personal Financial Statement of Guy Allen dated December 2, 2003, attached hereto as <u>Exhibit D</u>.

34. In reliance on the Indemnity Agreement and the Personal Financial Statement, Great American issued additional bonding to Allen Interior Systems.

35. Mr. Allen further submitted two Work-On-Hand Schedules for Great American's consideration, a careful review of which reveals what appear to be the same "facsimile signatures" alleged by the Allen Defendants to appear on the Indemnity Agreement.  See Work-On-Hand Schedules, attached hereto as Exhibit E.

36. Allen Interior Systems provided both manpower and financial support to the projects ultimately abandoned by Northern and State Line.

37. For example, Allen Interior Systems supplied a project superintendent to a Northern project located in Connecticut.

38. Allen Interior Systems also remitted payment to at least one subcontractor of State Line, in connection with a State Line project in Manchester.  See Allen Interior Systems, Inc. Check No. 5445 dated December 23, 2003 and accompanying Application and Certification for Payment, attached hereto as Exhibit F.

39. Allen Interior Systems paid $47,700.00 to State Line subcontractor Island International on or about December 23, 2003.

40. A review of the check, and the accompanying Application and Certification for Payment, confirms that the payment pertains to State Line's Manchester project, and that Island International contracted with State Line, not Allen Interior Systems.

41. Upon information and belief, Allen Interior Systems was not directly responsible for the Manchester project in any manner.

42. Nonetheless, Allen Interior Systems was satisfying the payables of its co-indemnitor State Line with respect to this project.

43. This involvement of Allen Interior Systems on projects for which its co-indemnitors were responsible is indicative of a joint undertaking amongst the indemnitors on the bonded projects.

44. The Resolutions accompanying the Indemnity Agreement, and executed by the principals of each co-indemnitor, including Guy Allen, indicate that Allen Interior Systems, Northern, and State Line are "materially interested by reason of common ownership" in securing indemnity from Great American.

45. Great American issued several bonds directly on behalf of Allen Interior Systems.

46. The Allen Defendants acknowledge having received bonds on two projects: (1) Brooksby Village, issued on April 26, 2002; and (2) Concord Hospital Cancer Center, issued on May 6, 2002. See Guy Allen's Response to Great American's First Set of Interrogatories, attached hereto as <u>Exhibit A</u>, ¶ 10; Guy Allen's Response to Great American's First Request for Production of Documents, attached hereto as <u>Exhibit G</u>, ¶ 1.

47. Both bonds were issued immediately following the Allen Defendants' execution of the Indemnity Agreement on April 9, 2002. <u>Id</u>.

Signed under the pains and penalties of perjury this 14th day of December, 2005.

/s/ Ed Kirsch
_____
Ed Kirsch

34016125v1 856557