UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Great American Insurance Company | )<br>)<br>) |
| Plaintiff | ) Docket No:   04-10756(MEL)<br>) |
| vs. | )<br>) |
| Allen Interior Systems, Inc., DRN, Inc.<br>d/b/a Northern Interior Systems,<br>Guy Allen and Serge Roy | )<br>)<br>)<br>) |
| Defendants | )<br>) |

**DEFENDANT GUY ALLEN AND ALLEN INTERIOR SYSTEMS, INC.'S REPLY BRIEF REGARDING THE MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, Allen Interior Systems, Inc., and Guy Allen, (collectively the "Allen Defendants"), by their attorneys D'Amante Couser Steiner Pellerin, P.A., and reply to Plaintiff Great American Insurance Company's ("Plaintiff") Opposition to Defendants' Motion for Summary Judgment as follows:

I.   Plaintiff's Procedural Argument

A.   The Allen Defendants' Prior Motion for Summary Judgment

Plaintiff argues (1) that this Court has already acknowledged in its Order of November 10, 2004, that a "federal" issue of fact exists with respect to the execution of the Indemnity Agreement (*see* Order, dated November 10, 2004, and Plaintiff's Opposition to Motion for Summary Judgment, Document 47, at page 4) and therefore should reject the current motion for summary judgment; and (2) that the Allen Defendants have merely renewed this denied motion, submitting no further materials in support thereof.  Neither assertion succeeds.

The nature of Plaintiff's objection to summary judgment in 2004 was purely procedural, based upon (1) a claim that the Allen Defendants had supposedly failed to submit a properly titled statement of material facts, as well as (2) a need for discovery.  Plaintiff did not address the substantive issues of the Allen Defendants' motion at the time.  *See* Plaintiff's Opposition to Motion for Summary Judgment, Document No. 28.  Presumably the basis of the Court's Order denying the motion was also that discovery had not yet been conducted, and was designed to allow Plaintiff the opportunity to determine the existence of facts relating to its case.  Since that time, discovery has been conducted, the time for discovery has closed and the deadline for expert disclosures has passed.  Further, even were the Court's Order substantive in nature, "[t]here is no prohibition against [a court's] reconsidering a prior denial of summary judgment, because a ruling denying summary judgment does not constitute 'law of the case'." *The Straumann Company v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 134, n.3 (D.Mass. 2003).

Moreover, contrary to Plaintiff's contention, the Allen Defendants have submitted additional factual and legal arguments in their current motion for summary judgment.  As discussed more fully below as well as in the Allen Defendants' current motion for summary judgment, Document No. 40, the Allen Defendants have submitted the affidavit of the only expert in this case – a document examination expert – who has testified that the signatures claimed by Plaintiff to be that of Guy Allen are in fact either facsimile signatures or signatures of some other person.  Despite its opportunity to do so, Plaintiff has disclosed no opposing expert.

B.  Plaintiff's Purported Need for Discovery

Plaintiff also complains that it needs deposition discovery before it can respond adequately to the summary judgment motion.[1]  However, pursuant to this Court's Order and the agreement of the parties, non-expert discovery closed as of March 15, 2005.  *See* Document No.18 regarding` the discovery schedule in this case; Electronic Order entered October 13, 2004.  That Plaintiff chose to take no depositions in this matter should not prejudice the Allen Defendants' ability to obtain summary disposition.

II.  The Absence of Issues of Material Fact

As Plaintiff admits, to defeat a motion for summary judgment, Plaintiff must establish the existence of an issue of fact which is both "genuine" and "material" to a determination of the case before the Court.   This Plaintiff cannot do.

"A 'genuine' issue is one that only a finder of fact can resolve because it may reasonably be resolved in favor of either party and a 'material' issue is one that affects the outcome of the suit." *Dale v. H.B. Smith Company, Inc.*, 910 F.Supp. 14, 18 (D.Mass. 1995).  Further, if the evidence is merely colorable or is not sufficiently probative, Summary Judgment may be granted; Plaintiff must show that there is sufficient evidence in its favor that a jury could return a verdict in Plaintiff's favor.  *See Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

Plaintiff attempts to raise a number of what it claims to be factual issues requiring a trial.  However, given the record before the Court, the issues raised do not rise to the level of genuineness or materiality required to defeat a motion for summary judgment.

---

[1] This was also the primary argument made by Plaintiff regarding the Allen Defendants' first motion for summary judgment.  *See* Document 28.

A. <u>The Signature on the Indemnity Agreement</u>

Plaintiff argues that an issue of fact exists with respect to whether or not Guy Allen himself signed the Indemnity Agreement on behalf of himself and Allen Interior Systems. Plaintiff appears to claim, without legal authority, that the very existence of the notarized signatures on the Indemnity Agreement creates issues of material fact with regard to three items:

- Whether the signatures were the product of a signature stamp.

- Whether Guy Allen himself employed the signature stamp to sign the Agreement.

- Whether Guy Allen authorized the use of the stamp on the Agreement.

However, no *genuine* issue of fact exists with respect to whether the signatures were original because, given the totality of the evidence taken in the light most favorable to Plaintiff, it could not reasonably be determined that the signatures were original rather than the product of a signature stamp. *See Dale*, 910 F.Supp. at 18; *Rogers*, 902 F. 2d at 143 (evidence that is merely colorable insufficient to avoid Summary Judgment). In support of its motion for summary judgment, the Allen Defendants submitted the affidavits of both Guy Allen and Christine Cusack, a document examination expert, and the only expert disclosed in this matter. Both affidavits confirm that the signatures on the Agreement which purport to be those of Guy Allen were not in fact those of Guy Allen, but were rather placed on the Agreement by way of a signature stamp. Document No. 44, Affidavit of Guy Allen, dated November 11, 2005 ("Allen Affidavit"), par. 3, 3,a, 3,b,3,c, 6; Document No. 43, Affidavit of Christine T. Cusack, dated November 1, 2005 ("Cusack Affidavit"), par. 3,4,5, and Exhibit B thereto.

Further, there is no *genuine* issue regarding whether Guy Allen himself employed the stamp on the document. The only evidence on this issue is the testimony of Guy Allen, who testified by affidavit that he did not sign the Agreement and did not know that the stamp had been used on the Agreement or even of the existence of the Agreement prior to 2004. Document No. 44, Allen Affidavit, par. 3, 3,a.

Finally, while it is mentioned in this section of Plaintiff's argument, Plaintiff does not appear to actually argue that the mere existence of the stamped signature on the Agreement could create a triable issue of fact with respect to whether Guy Allen authorized the use of the stamp on this document. However, any such argument would fail because the only testimony on this issue is that of Guy Allen, who testified by affidavit that he did not authorize the use of the stamp on the Agreement. Document No. 44, Allen Affidavit, par. 3,a.

        B.     <u>The Authority of Those Other Than Guy Allen to Execute the Agreement</u>

Plaintiff's claim that there may have been others authorized to use Guy Allen's signature stamp to execute the Agreement is equally unsupported and does not constitute a genuine issue of fact.[2] Plaintiff claims that Serge Roy executed the Agreement as well as a Non-Transfer of Assets Agreement on behalf of AIS as its Vice President, and Plaintiff also appears to claim that Roy might have used Allen's signature stamp on behalf of AIS in his capacity as such. However, the AIS corporate documents as well as the only testimony before the court on this subject clearly show that Serge Roy is not and was not a Vice President of AIS. Document No.44, Allen

---

[2] Plaintiff, by way of a footnote, suggests that Guy Allen has held "every office of Allen Interior Systems, Inc., with the sole exception of Vice President," perhaps seeking to suggest that another individual might have held this office. However, as Mr. Allen's affidavit makes clear, "No other person has held any office in Allen Interior Systems, Inc." Allen Affidavit, at par. 1.

Affidavit, par. 1, 3,a., 3,c. Guy Allen's affidavit makes clear that only Allen is authorized to act on behalf of AIS, and that he did not authorize Roy to act on his behalf or on behalf of AIS with regard to the Agreement (or any of the other documents attached to the Complaint by the Plaintiff). There is no testimony or other evidence to the contrary. As a result, there is no genuine issue for determination by a trier of fact.

Plaintiff also claims that there is an issue of fact with regard to whether Brenda Smith might have employed the stamp on behalf of AIS, and the extent of her authority to do so. Plaintiff claims that AIS' interrogatory responses has placed this fact in issue. However, the interrogatory answer to which Plaintiff refers indicates that Brenda Smith had been authorized to use the AIS signature stamp "at Guy Allen's specific direction." *See* Exhibit A to Document 49, at page 7. This does not change the simple fact that the only testimony before the court is that Allen was the only person authorized to act on behalf of AIS, that he did not authorize the use of the stamp on the Agreement by anyone, and that he does not know of any other occasion on which his signature stamp was used without his express authority. Document 44, Allen Affidavit, par. 3,a., 7. *See also* Exhibit A to Document 49, pages 5-6.

      C.     <u>Guy Allen's Knowledge of the Indemnity Agreement</u>

Plaintiff claims that Guy Allen's claims that he was unaware of the obligation imposed by the Agreement is belied by two exchanges he had with Great American: (1) a conversation with Ed Kirsch in March, 2004; and (2) an offer to complete the remaining work of the bonded companies.

1.   The Kirsch Telephone Notes

First, Mr. Allen's supposedly conflicting statements in his conversation with Ed Kirsh do not create a genuine issue of material fact. As Mr. Allen states in his affidavit of December 21, 2005 ("Allen December Affidavit"), filed in January, 2006 his first language is French, and Mr. Kirsh might have misunderstood Mr. Allen's statements due to his accent. Allen December Affidavit, par. 3,A. Mr. Allen did not and would not have stated both that he executed the Agreement and that he did not know about the Agreement. Allen December Affidavit, par. 3,A. Further, Plaintiff's reliance appears to be based solely upon cryptic notes of Ed Kirsch from a conversation with Guy Allen; these notes state as follows:

> Guy Allen          3/2/04
>
> Beban bonding      May 2002
>
> Serge Roy has no interest in
>
> In business for 13-14 years
>
> Signed indemnity agreement for that bond
>
> Did not know about the indemnity agreement
>
> Was first bond he needed

*See* Exhibit B to Document 49 [Note that the spelling of "Beban" could be incorrect due to handwriting]. Guy Allen has a specific recollection of that conversation. During the conversation, he discussed with Kirsch the fact that he signed bond agreements when a bond was issued to AIS for a job. He understood that he would be responsible to indemnify the surety on jobs relating to that bond. However, Allen did not tell Kirsch that he had signed an agreement to indemnify it for anyone else. Allen December Affidavit, par. 3, B.

Moreover, the Kirsh notes do not support a different inference - rather, they refer to the fact that Allen, signed an "indemnity agreement for *that* bond" and that Allen, "Did not know about *the* indemnity agreement." [Emphasis added in both quotations].  This supports rather than detracts from Allen's memory of the conversation, and does not create a genuine issue of fact such that a reasonable finder of fact could find that Allen had executed the indemnity agreement, particularly when considered in connection with the testimony of the expert witness indicating that the signatures on the Agreement were made via signature stamp and were not original signatures.

These cryptic notes are simply not sufficient to create a triable issue of fact with regard to whether Allen signed or authorized the Agreement.

2.    The Settlement Offer

Plaintiff also seeks to rely on correspondence between Plaintiff and the Allen Defendants to defeat this summary judgment motion.  This reliance is unfounded for two reasons.  First, as the Plaintiff itself points out, the correspondence constitutes an offer of compromise, which is inadmissible, *see* Fed.R.Civ.P. 408, and therefore cannot be used to defeat a motion for summary judgment.  *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir. 1993) (inadmissible evidence may not be considered in a summary judgment proceeding).

Further, even were the letter admissible, it makes no reference at all to the Agreement or to any legal responsibility of Allen or AIS to undertake the construction projects for which Northern Interiors was bonded.  Rather, AIS' offer, which followed Plaintiff's claim that AIS did bear responsibility to complete the job,  was to undertake to complete the project *only upon* an agreement on the part of Plaintiff to meet payroll, hire an additional project manager, make

timely payments for materials and equipment, and make profit and overhead payments to AIS. *See* Exhibit C to Document 49. No rational finder of fact could believe this to constitute an admission of AIS' liability under the Agreement.

3.  <u>The Personal Financial Statement</u>

Similarly, the submission of a personal financial statement of Guy Allen to Plaintiff when *AIS* sought bonding for its own jobs bears no relevance to Allen's agreement to indemnify *others* on their bonds, or to whether Allen either signed or authorized signature on the Agreement. In fact, it suggests to the contrary: that Allen believed Plaintiff to be relying solely on Allen's and AIS' own credit to bond AIS on its projects, and not on any indemnity agreement which would base AIS' credit upon that of other companies. As a result, it does not create a genuine or material issue of fact.

4.  <u>The Work-On-Hand Schedules</u>

Finally, Plaintiff argues that two Work-On-Hand Schedules, the origin and purpose of which is not set forth and the dates on which do not appear to correlate with the Agreement, establish a course of conduct on the part of AIS to employ a facsimile stamp on documents submitted to Plaintiff in support of requests for bonding. First, Plaintiff can only assert that the documents "appear" to contain facsimile stamps. Plaintiff has not disclosed any testimony, expert or otherwise, to support this claim (and, of course, it has been Plaintiff's position throughout that the purported Allen signature on the Agreement is an original signature, not that of a stamp). Secondly, even were the testimony to show that these two schedules, both of which appear to be dated in 2003 and were submitted for unspecified purposes to an agency other than Plaintiff, were signed via signature stamp, this fact would not be probative of whether Allen

signed, or authorized signature on, the Agreement. As a result, the evidence is not relevant or admissible, and cannot be considered for purposes of summary judgment. *See Horta v. Sullivan*, 4 F.3d at 11. And, even if admitted, they do nothing to change the testimony in this case, which is that Allen did on occasion authorize the use of his signature stamp, but that he did not sign the Agreement, nor did he authorize any person to sign it on his behalf or to use his signature stamp on it. Therefore, the Work-On-Hand Schedules do not create a genuine or material issue of fact.

        D.      <u>Relationship Between AIS, Northern and Stateline</u>

Plaintiff argues that yet two more facts belie the Allen Defendants' argument that they are not bound by the Agreement: (1) the fact that an AIS project superintendent was supplied to a Northern Interior Systems construction project in Connecticut; and (2) that AIS remitted payment to a subcontractor of State Line in connection with a State Line project in Manchester, New Hampshire.

        1.      <u>The Connecticut Work Site</u>

Plaintiff, unsurprisingly, provides no detail about the superintendent supposedly supplied by AIS to a Connecticut work site of Northern Interior Systems. Rather, it merely states that such a superintendent was supplied. The superintendent in question was sent by AIS to the Connecticut work site at issue in this litigation after Plaintiff had asserted that AIS was responsible to complete the defaulted job there. Allen and AIS sent an AIS superintendent to the site to determine whether AIS could complete the defaulted job, with compensation by Plaintiff for doing so. *See* Allen December Affidavit, par. 5. Ultimately, AIS was not hired to complete the Connecticut project. *Id.* The fact that AIS sent a superintendent to the site to determine whether AIS would be willing to undertake the job does not create a triable issue of fact with

regard to whether Allen signed or authorized signature of the Agreement on his own behalf or that of AIS.

2. <u>The Payment to the Sub-Contractor</u>

Plaintiff also in error relies on the fact that AIS made a payment to a subcontractor of Stateline, Island International, in December, 2003, to suggest that AIS and Stateline are in some way bound together. In 2003, AIS owed money to Interstate Rentals, Inc. (which Allen believes was owned by Serge Roy) for the rental of equipment. In order to discharge this obligation, and at Serge Roy's direction, AIS made a payment directly to Island International, a creditor of State Line (another corporation owned by Serge Roy). AIS received a credit memo from Interstate Rentals, Inc., acknowledging payment of the AIS debt to Interstate Rentals, Inc. *See* Allen December Affidavit, and Exhibit A to Allen December Affidavit. The payment by AIS of its debt to Interstate Rentals by a check made payable to a third party at the direction of Interstate Rentals' owner does not give rise to an issue of material fact regarding whether Allen signed or authorized signature of the Agreement on behalf of himself or AIS.

3. <u>"Significant Involvement"</u>

Plaintiff describes the above-noted visit of an AIS superintendent to a Connecticut job site following Plaintiff's threat of litigation against Allen and AIS, and the payment of a single check to a third-party vendor as evidencing "significant involvement" between AIS, Stateline and Northern Interior Systems. Plaintiff claims that such involvement suggests a joint undertaking, raising questions of fact regarding the relationship between AIS, State Line and Northern Interior Systems as well as regarding Allen's knowledge of the existence of the Agreement. Plaintiff, once again, is wrong.

Plaintiff has no claims relating to a joint undertaking between the various defendants. Rather, Plaintiff's claims against the Allen Defendants all arise from the purported Agreement. Moreover, Allen and AIS have produced evidence that AIS is owned and controlled solely by Allen. It has no corporate inter-relationship with State Line or Northern Interior Systems. *See* Document 44, Allen Affidavit at par. 5. The mere facts that AIS sent a superintendent to a Connecticut job site after having been threatened with litigation by Plaintiff, and that AIS made a payment on a debt owed to Interstate Rentals by way of a check payable to a third party upon the instruction of Interstate Rentals does not alter this fact. Nor does it give rise to a genuine issue of material fact regarding Allen's signature on or authorization of the Agreement. Rather, it constitutes the sort of mere conjecture, unsupported by record evidence, which cannot survive a motion for summary judgment in this Court. *See, e.g., Boulais v. Town of Rehoboth,* 2002 U.S. Dist. Lexis 13906, *6 (D.Mass. 2002)(Conjecture relating to motive behind actions insufficient to avoid Summary Judgment); *Dale v. H.B. Smith Co., Inc.*, 910 F.Supp. 14, 19 (D.Mass. 1995) (granting summary judgment where evidence of inter-corporate relationship insufficient to pierce corporate veil).

      E.     AIS' Benefit from Bonds Issued by Plaintiff in 2002

Plaintiff argues that it bonded AIS on two jobs several months after the Agreement was put into effect, and that this gives rise to an issue of fact with regard to the Allen Defendants' knowledge of the Agreement and also shows that the Allen Defendants benefitted from the Agreement.

Evidence that Allen signed bonding agreements with Plaintiff for bonds on AIS projects in April and May of 2002 does not create a genuine issue of material fact regarding whether Allen signed or authorized or even knew about the Agreement which would have required him to indemnify others. The Allen Defendants are not liable for Plaintiff's reliance on a document the Allen Defendants did not sign or authorize. The testimony shows that Allen was not aware of the Agreement at the time the bonds were issued in favor of AIS, or at any time prior to 2004. Rather, again, Plaintiff relies on conjecture, which it cannot do and survive summary judgment. *E.g., Boulais*, 2002 U.S. Dist. Lexis 13906, *6; *Dale* 910 F.Supp.14, 19.

## CONCLUSION

In an attempt to avoid summary disposition, Plaintiff has attempted to inundate the court with numerous facts, none of which are particularly relevant to the liability of the Allen Defendants. The Plaintiff seems to want to avoid its principal problem that the testimony in the case - - that of both Allen and the only expert disclosed - - is that the Agreement was signed by means of a signature stamp, and that Guy Allen neither used the stamp on the Agreement, authorized its use, nor even knew of its use on the Agreement prior to 2004.

The summary judgment standard is determinative in this case: "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Rogers*, 902 F.2d at 143 (*quoting Anderson,* 477 U.S. at 249-50) (citations and footnote in *Anderson* omitted). Here, the Plaintiff simply has not raised a sufficient factual argument (and has made no legal argument) to avoid the entry of summary judgment.

WHEREFORE, Allen Interior Systems and Guy Allen respectfully request that this Honorable Court grant summary judgment in their favor, dismissing the claims of Great American, and that the Court grant such other and further relief as justice may require.

Respectfully submitted,

ALLEN INTERIOR SYSTEMS
And Guy Allen

By Their Attorneys,
D'AMANTE COUSER STEINER
PELLERIN, P.A.
9 Triangle Park Drive
PO Box 2650
Concord, NH 03302-2650
(603) 224-6777

Dated: January 6, 2006              /s/ Richard B. Couser
                                    Richard B. Couser, Esq. (BBO: 645543)
                                    Nine Triangle Park Drive
                                    P.O. Box 2650
                                    Concord, NH 03302-2650
                                    (603)-224-6777
                                    (603)-224-6696 - Fax

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have forwarded a copy of the Defendant Guy Allen and Allen Interior Systems, Inc.'s Reply Brief Regarding the Motion for Summary Judgment electronically to Jonathan C. Burwood, Esq.; and Bradford R. Carver, Esq. and via First Class Mail to William S. Gannon, Esq.; and David W. Carr, Esq.

Dated: January 6, 2006              /s/ Richard B. Couser
                                    Richard B. Couser, Esq. (BBO: 645543)